**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ROBERT BROWN PATTERSON, Trustee,
Plaintiff-Appellant,

v.

BRENDA G. OLIVER,
Defendant-Appellee,

FIRST UNION NATIONAL BANK,
Intervenor-Appellee,

and

RONALD EUGENE ADKINS,
Defendant.

No. 98-1283

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
James C. Cacheris, Senior District Judge.
(CA-97-466-A)

Submitted: February 12, 1999

Decided: March 19, 1999

Before WILKINS and HAMILTON, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Robert Brown Patterson, Appellant Pro Se. Brenda G. Oliver, Singer
Island, Florida; James Bruce Davis, BEAN, KINNEY & KORMAN,
P.C., Arlington, Virginia, for Appellees.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

The district court in this action determined following a non-jury trial that Ronald Eugene Adkins, in an effort to avoid paying Robert Patterson fees for legal services, had conveyed to Brenda Oliver for no consideration: (1) a 6.7-acre tract of land in Woodbridge, Virginia; and (2) all outstanding stock in Cherokee Corporation of Linden, Virginia (Cherokee). Because it found that these were fraudulent conveyances, the court voided both transfers and awarded Patterson forty percent of the stock of Cherokee.

The court also found that Patterson had proven that Adkins and Oliver conspired to avoid paying Patterson's fees and expenses. However, the court found that no further award of damages was appropriate. It accordingly declined to award Patterson monetary damages in addition to the Cherokee stock. Patterson now appeals. The sole issue raised on appeal is whether the court correctly determined that he was not entitled to monetary damages.

I

Adkins was the president and chief executive officer of Occoquan Land Development Corporation (Occoquan), through which he acquired and developed a ski resort in Virginia. The development was to be effected by Cherokee, another of Adkins' corporations. The ski resort proved financially unsuccessful and went into foreclosure.

Adkins, on behalf of himself and Cherokee, retained Patterson in connection with the foreclosure. The November 1993 retainer agreement states that Adkins agreed "to compensate us at the rate of one hundred twenty-five dollars ($125) per hour. As additional compensation, we shall receive twenty-five percent (25%) of all amounts paid to you pursuant to this matter whether by way of settlement, or judg-

2

ment, or otherwise." Additionally, Adkins and Cherokee were responsible for reasonable expenses incurred during Patterson's representation.

Patterson performed substantial legal work on Adkins' and Cherokee's behalf. Among other things, he was successful in voiding the foreclosure and restoring title to the ski resort to Cherokee. Adkins, however, did not promptly pay Patterson's bills. As a result, Patterson, Adkins, and Adkins on behalf of Cherokee entered into an Amendment to Engagement Agreement dated December 28, 1994. The agreement stated that "[a]s additional compensation for this representation, the law firm shall receive forty percent (40%) of any proceeds received from this matter whether in the form of money, property, or otherwise, and whether received as a result of judgment, settlement, or otherwise." Other terms of the November 1993 agreement remained unchanged.

At some point between the date of the amended agreement and February 23, 1995, Adkins and his friend Brenda Oliver caused all outstanding stock in Cherokee and Occoquan to be transferred to Oliver for no consideration. Also, in the spring of 1994, 4,000 acres of land owned by Occoquan in West Virginia was sold. Proceeds of that sale ($89,000) were used to purchase the land in Woodbridge. The land should have been a corporate asset of Occoquan, but was instead placed in the name of Melvin Greenberg, as trustee for Oliver. Oliver paid no consideration for the land.

Patterson brought the instant suit against Oliver and Adkins, alleging breach of contract, fraudulent conveyance, fraud, conspiracy, and unjust enrichment. He sought forty percent of the Cherokee stock; compensatory damages of $272,948 plus interest, costs, and attorney's fee; treble damages; $350,000 in punitive damages; a declaration that the conveyance of the stock and Woodbridge property to Oliver was void; and a judgment lien on the Woodbridge property.

Adkins was dismissed as a party because his presence destroyed diversity. The district court granted summary judgment to Oliver on the breach of contract and unjust enrichment counts, and the action proceeded to trial on the remaining counts. The court found Oliver liable for fraudulent conveyance and conspiracy, voided the convey-

3

ance to Oliver of the Woodbridge property and the stock, and awarded Patterson forty percent of the Cherokee stock. The court found that this remedy for the fraudulent conveyance made Patterson whole and declined to award further relief in the form of monetary damages for conspiracy.

Displeased with his recovery of only the Cherokee stock, Patterson appeals the district court's order. He contends solely that Oliver, as a conspirator, is liable for the full measure of damages caused by the conspiracy.

II

In his complaint Patterson claimed entitlement to $272,948 in damages. In a motion for reconsideration submitted to the district court and in his informal appellate brief, the amount increases to $305,976.66. The record before us does not disclose how Patterson arrived at either of these figures. In Virginia:

> compensatory damages are those allowed as a recompense for loss or injury actually sustained. . . . In determining the quantum of proof required to sustain [compensatory] damage awards, . . . a plaintiff must show the amount of his damages with reasonable certainty. . . . A plaintiff's burden of proving the elements of damage with reasonable certainty requires him to furnish evidence of sufficient facts and circumstances to permit the fact-finder to make at least an intelligent and probable estimate of the damages sustained.

Dillingham v. Hall, 365 S.E.2d 738, 739 (Va. 1988) (internal citations and quotations omitted). Here, the record on appeal is silent as to any proof of damages.

Because Patterson points to no evidence establishing his entitlement to any certain amount of damages, we cannot say that the district court erred in finding that the award of forty percent of Cherokee's stock rendered Patterson whole. Nor is Patterson entitled to costs, as he did not file with the district court a bill of costs as required by 28 U.S.C. § 1920 (1994).

4

We accordingly affirm the judgment of the district court. We deny Oliver's motion to clarify and First Union's motion to dismiss the appeal. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

5